# EXHIBIT 2

# Policy and Procedures for Proposed Franchise Relocations

Article 8.5 of the NFL Constitution and Bylaws vests in the Commissioner the authority to "interpret and from time to time establish policy and procedure in respect to the provisions of the Constitution and Bylaws and any enforcement thereof." Set forth below are policy and procedures to apply to future League consideration, pursuant to Section 4.3 of the Constitution and Bylaws, of any proposed transfer of a club's home territory.

Article 4.3 requires prior approval by the affirmative vote of three-fourths of the member clubs before a club may transfer its franchise or playing site to a different city either within or outside its existing home territory. Article 4.3 confirms that each club's primary obligation to the League and to all other member clubs is to advance the interests of the League in its home territory. This primary obligation includes, but is not limited to, maximizing fan support, including attendance, in its home territory. Article 4.3 also confirms that no club has an "entitlement" to relocate simply because it perceives an opportunity for enhanced club revenues in another location. Indeed, League traditions disfavor relocations if a club has been well-supported and financially successful and is expected to remain so. Relocation pursuant to Article 4.3 may be available, however, if a club's viability in its home territory is threatened by circumstances that cannot be remedied by diligent efforts of the club working, as appropriate, in conjunction with the League Office, or if compelling League interests warrant a franchise relocation.

Article 4.3 also reflects the League's collective judgment that unassigned franchise opportunities (including "second franchise" opportunities in the home territory of a member club) are owned by the League's members as a collective whole and, by definition, that no club has rights to more than a single "home territory." Such collective League opportunities may be acquired by an individual club only by an assignment reflecting the consent of the League and subject to its generally applicable voting requirements.

**A. Negotiations Prior to League Consideration**

1. Because League policy favors stable team-community relations, clubs are obligated to work diligently and in good faith to obtain and to maintain suitable stadium facilities in their home territories, and to operate in a manner that maximizes fan support in their current home community. A club may not, however, grant exclusive negotiating rights to a community or potential stadium landlord other than one in its current home territory.

2. All clubs, at any time during their stadium negotiations, are free to seek the assistance of the League Office and the Stadium Committee, on either a formal or informal basis. If, having diligently engaged in good faith efforts, a club concludes that it cannot obtain a satisfactory resolution of its stadium needs, it may inform the League Office and the stadium landlord or other relevant public authorities that it has reached a stalemate in those negotiations. Upon such a declaration, the League may elect to become directly involved in the negotiations.

3.  The League's policy and procedures on franchise relocation do not restrict any club's ability to discuss a possible relocation, or to negotiate a proposed lease or other arrangements, with a community outside its home territory. Nor do they restrict the ability of multiple clubs to negotiate terms of a proposed relocation with a single community.

In evaluating a proposed franchise relocation and making the business judgment inherent in such consideration, the membership is entitled to consider a wide range of appropriate factors. Each club should consider whether the League's collective interests (which include, for example, the League's television interests, the League's interest in strong and geographically distributed franchises, the League's interest in securing attractive stadium facilities in which to play its games, and the League's interest in having financially viable franchises) would be advanced or harmed by allowing a club to leave its assigned home territory to assume a League-owned opportunity in another community. These collective interests generally include having clubs in the country's most populous areas, taking into account competitive entertainment alternatives, stadium options, and other factors.

Like proposed transfers to a different home territory, a transfer of a club's playing site to a different location within its home territory may also raise issues of League-wide significance. Accordingly, while these procedures apply to any proposed move to a new home territory, the Commissioner may also require that some or all of these procedures be followed with respect to a proposed move within a club's existing home territory.

A. **Procedures Relating to Notice and Evaluation of the Proposed Transfer**

Before any club may transfer its franchise or playing site outside its current home territory, the club must submit a proposal for such transfer to the League on the following basis:

1.  The club must give the Commissioner written notice of the proposed transfer, including the date on which the proposed relocation is to become effective, and publish the notice in newspapers of general circulation within the incumbent community. The notice must be filed no later than February 15 of the year in which the move is scheduled to occur. The League will provide copies of the notice to governmental and business representatives of both the incumbent community and the community to which the team proposes to move, as well as the stadium authority (if any) in the incumbent community (the "interested parties").

2.  The notice must be accompanied by a "statement of reasons" in support of the proposed transfer. The statement must address each of the factors outlined in Part C below, and may also identify and discuss any other relevant business factors that the club believes support its request to move. The Statement must also include all of the material noted in Appendix One.

3.  With the assistance of appropriate League committees, the Commissioner will evaluate the proposed transfer and report to the membership. The Commissioner may also convene a special committee to perform fact-finding or other functions with respect to any such proposed transfer.

4. Interested parties will have an opportunity to provide oral and/or written comments regarding the proposed transfer, including at a public hearing conducted by the League in the community from which the team seeks to relocate; written comments may be submitted within 15 days of the conclusion of such hearing.

5. Following the Commissioner's report on the proposed transfer, the proposal will be presented to the membership for action in accordance with the Constitution and Bylaws, either at a Special Meeting of the League held for that purpose or at the Annual Meeting.

6. After any League vote on a proposed relocation, the League will:

   i. publish, within 30 days of any relocation decision, a written statement of reasons in newspapers of general circulation within the incumbent community setting forth the basis of its decision in light of the League's rules and procedures for evaluating franchise relocation; and

   ii. deliver copies of its written statement of reasons to the local governments of the community from which the club seeks to relocate and any sports authority or similar entity with jurisdiction over the stadium or facility from which the club seeks to relocate.

**C. Factors That May Be Considered In Evaluating The Proposed Transfer**

The League has analyzed many factors in making prior business judgments concerning proposed franchise relocations. Such business judgments may be informed through consideration of the factors listed below, as well as other appropriate factors that are considered relevant by the Commissioner or the membership.[1]

Any club proposing to transfer should, in its submission to the Commissioner, present the club's position as to the bearing of these factors on its proposed transfer, stating specifically why such a move would be justified with reference to these considerations. In reporting to the membership, the Commissioner will also address these factors.

In considering a proposed relocation, the Member Clubs are making a business judgment concerning how best to advance their collective interests. Guidelines and factors such as those identified below are useful ways to organize data and to inform that business judgment. They are intended to assist the clubs in making a decision based on their judgment and experience, and taking into account those factors deemed relevant to and appropriate with regard to each proposed move. Those factors include:

---

[1] Most of the factors were contained in a bill reported by a Senate committee in 1984; they essentially restate matters that the League has considered important in connection with team location decisions in the past. Certain factors included in the Senate bill have been modified, and certain new factors have been added, to reflect changed circumstances and the League's historical experience since 1984. These factors are also contained in a "Statement of Principles" relating to franchise location developed by the League in consultation with the U.S. Conference of Mayors.

1. The extent to which the club has satisfied, particularly in the last four years, its principal obligation of effectively representing the NFL and serving the fans in its current community; whether the club has previously relocated and the circumstances of such prior relocation;

2. The extent to which fan loyalty to and support for the club has been demonstrated during the team's tenure in the current community;

3. The adequacy of the stadium in which the club played its home games in the previous season; the willingness of the stadium authority or the community to remedy any deficiencies in or to replace such facility, including whether there are legislative or referenda proposals pending to address these issues; and the characteristics of the stadium in the proposed new community;

4. The extent to which the club, directly or indirectly, received public financial support by means of any publicly financed playing facility, special tax treatment, or any other form of public financial support and the views of the stadium authority (if public) in the current community;

5. The club's financial performance, particularly whether the club has incurred net operating losses (on an accrual basis of accounting), exclusive of depreciation and amortization, sufficient to threaten the continued financial viability of the club, as well as the club's financial prospects in its current community;

6. The degree to which the club has engaged in good faith negotiations (and enlisted the League office to assist in such negotiations) with appropriate persons concerning terms and conditions under which the club would remain in its current home territory and afforded that community a reasonable amount of time to address pertinent proposals;

7. The degree to which the owners or managers of the club have contributed to circumstances which might demonstrate the need for such relocation;

8. Whether any other member club of the League is located in the community in which the club is currently located;

9. Whether the club proposes to relocate to a community or region in which no other member club of the League is located; and the demographics of the community to which the team proposes to move;

10. The degree to which the interests reflected in the League's collectively negotiated contracts and obligations (e.g., labor agreements, broadcast agreements) might be advanced or adversely affected by the proposed relocation, either standing alone or considered on a cumulative basis with other completed or proposed relocations;

11. The effect of the proposed relocation on NFL scheduling patterns, travel requirements, divisional alignments, traditional rivalries, and fan and public perceptions of the NFL and its member clubs; and

12. Whether the proposed relocation, for example, from a larger to a smaller television market, would adversely affect a current or anticipated League revenue or expense stream (for example, network television) and, if so, the extent to which the club proposing to transfer is prepared to remedy that adverse effect.

### D. Existing Leases

1. No request to relocate shall be unconditionally approved, nor shall a relocation be allowed to take effect, if it would result in a breach of the club's current stadium lease. This provision shall not apply if the club and its landlord agree to terminate the lease or if there is a final court order terminating the lease or concluding that the lease does not preclude a relocation.

2. A decision by the League conditionally or unconditionally authorizing a member club to relocate shall not affect the enforceability under state law of a stadium lease to which that member club is a party.

### E. Payments Associated with an Approved Transfer

If a club's proposal to relocate to a new home territory is approved, the relocating club will ordinarily be expected to pay a transfer fee to the League. The transfer fee will compensate other member clubs of the League for the loss of the opportunity appropriated by the relocating club and/or the enhancement (if any) in the value of the franchise resulting from the move.

The Commissioner may recommend a transfer fee to the membership and Finance Committee for consideration in connection with any proposed transfer that he recommends be approved. Among the factors to be considered in the recommendation of such fee will be:

1. The income streams available to the club in its new location and the likelihood that they will be realized (which may be affected by community or business guarantees or similar undertakings);

2. The income streams historically available to the club in its previous location, and the incremental income streams (if any) that could reasonably be expected to be made available to the club in its old location;

3. The expenses to be borne by the club in its current and proposed locations;

4. The expenses that could reasonably be expected to be assumed by parties other than the club if the relocation does not take place;

5. The desirability of the club's current and proposed stadia as locations for professional football games;

6. The club's current status under any revenue sharing plans then in effect and its anticipated status if the move were approved;

7.   The effect of the proposed relocation on current or anticipated League-level revenue and expense streams; and

8.   The demographics of the club's old and new markets.

The Commissioner's recommendation of a transfer fee will not be based on any effect that the proposed move would have on any salary cap or similar player-employment arrangements.

The membership will determine the transfer fee (or, in the alternative, a recommended, binding method for determining the transfer fee), if any, at the time it approves any proposed club relocation. The terms on which the transfer fee will be paid will be set forth in the resolution itself, and will be reflected in appropriate documentation acceptable to the Commissioner and the Finance Committee.

In addition, in certain circumstances, the League's collective interests may depend upon the maintenance of quality franchises in specific geographic areas. If a team proposes to relocate into, or to relocate from, such an area, in evaluating the proposed relocation, the Commissioner will and the membership may take into account, in determining the appropriate transfer fee (if any), the League's interest in encouraging the proposed relocation, discouraging the proposed relocation, or permitting the relocation on terms that would permit the League to restore a meaningful presence in the area being vacated by the relocating club.

Finally, if League-level revenue or expense streams or visiting team shares are projected to be adversely affected by a proposed relocation, on either a short-term or long-term basis, based upon a recommendation by the Commissioner and Finance Committee the relocating club will be required to indemnify other members of the League for adverse effects that could result from the proposed relocation. If such recommendation is included by the membership in the resolution authorizing the move, the Commissioner will, in consultation with the Finance Committee, negotiate with the relocating club appropriate indemnification arrangements, including the extent to which the relocating club may participate in League revenue sharing pools, to be reflected in documentation acceptable to the Commissioner and the Finance Committee.