# EXHIBIT 3

# The United States Conference of Mayors
# and
# The National Football League
# Joint Statement of Principles

**Preamble:** The United States Conference of Mayors (USCM) and the National Football League (League) are committed to stable team-community relations. Stability is good for fans, good for home cities and good for professional sports. Communities, sports fans and taxpayers make a substantial and valuable financial, psychological and emotional investment in their professional sports team. Professional sports teams are businesses which promote civic pride and generate jobs, revenues and other local economic development. Communities, teams and the National Football League should work together to identify and resolve issues pertaining to team relocations, stadium improvements, and League expansions.

## I. Team Movement

Communities, stadium authorities and team owners should deal with each other in equitable and fair ways. Teams should give a fair and reasonable opportunity and time frame, for example, six months to communities to respond to economic and facility issues before filing for a possible relocation. Such a time frame should be sufficient to allow for reasonable negotiations and, where appropriate, political processes to occur that may obviate the need for a possible relocation.

It is important that the League maintain rules and procedures to regulate the movement of teams consistent with this Statement of Principles. Such rules should recognize both the private interest of team owners to maintain a profitable business and public interest to enjoy the direct and indirect benefits of having a professional sports franchise. The League should have the ability to enforce its own rules and the obligation to follow a set process before the relocation of a team is permitted to occur.

Control of team location is a matter for the League members to determine jointly, according to rules established and applied by the League. On occasion, it will be necessary to permit a team to move; in many more instances, a move will not be justified. The USCM and the League recognize that antitrust litigation complicates the issues surrounding team relocations. The USCM and the League understand that absent a statutory clarification that permits the League to enforce its rules without exposure to antitrust suit, the League may not be able to implement certain procedures set forth in this Statement of Principles.

League decisions should be made with reference to objective criteria that account for the interest of fans, communities, taxpayers and owners. Such criteria should be available to the public, and include:

(1) the adequacy of the stadium in which the team played its home games in the previous season; the willingness of the stadium or the community to remedy any deficiencies in such a facility, including whether there are legislative or referenda proposals pertaining to address these issues; and the characteristics of the stadium in the proposed new community;

(2) the extent to which fan loyalty to and support for the team has been demonstrated during the team's tenure in the community; and the demographics of the community to which the member team proposes to move;

(3) the extent to which the team, directly or indirectly, received public financial support by means of any publicly financed playing facility, special tax treatment, or any other form of public financial support;

(4) the degree to which the owners or managers of the team have contributed to any circumstances which might demonstrate the need for relocation;

(5) the team's financial performance particularly whether the team has incurred net operating losses, exclusive of depreciation and amortization, sufficient to threaten the continued financial viability of the team, and financial prospects in its current market;

(6) the degree to which the team has engaged in good faith negotiations with appropriate persons concerning terms and conditions under which the team would continue to play its games in the community and afforded that community a reasonable amount of time to address pertinent proposals;

(7) whether any other team in the League is located in the community in which the team is currently located;

(8) whether the team proposes to relocate to a community in which no other team in the League is located;

(9) whether the current community stadium authority, if public, is not opposed to such relocation; and

(10) whether there is a bona fide investor who is offering fair market value for the professional sports team and who would, if he/she acquired the team, retain the team in the current community.

The League will give fair consideration to the information presented by a community in each of the ten criteria.

No request to relocate shall be unconditionally approved, nor shall a relocation be allowed to take effect, if such action by the team's owner would result in a breach of its contract under state law with the owner of the stadium in which the professional sports team in playing its home games unless the team owner and the owner of the stadium agree to terminate the lease or there is a final state court order terminating the lease.

## II. Request for Approval of Proposal to Relocate

A team owner seeking to relocate the team from one community to another should submit the request for approval of the proposed relocation to the League and send a copy to interested persons. Those persons shall include at least the following: (a) governmental and business representatives of both the community currently represented by the team and the community to which the team proposes to move; and (b) representatives of the stadium authority in the team's current home community. Notification will also be placed in a newspaper of general circulation in the team's current home community. These interested persons shall receive notice of the proposed relocation at least six months before it is scheduled to become effective (this six month period is to follow the fair and reasonable opportunity and time frame, teams are to give communities before filing for a possible relocation) ; and shall have the opportunity to provide oral and/or written comments to the League Commissioner, appropriate League committees and the full ownership itself in advance of any decisions being made by the League in response to a request for permission to relocate.

This notice of relocation shall be delivered in person or by certified mail; be published in newspaper of general circulation within the community in which the team is located; and contain an identification of the proposed new location for the team and the date on which the proposed change is scheduled to become effective.

Thereafter the League shall:

(1) Conduct a public hearing in the community from which the team seeks to relocate, and create an opportunity for written comments to be submitted within 15 days of the conclusion of such hearings;

(2) Publish within 30 days of a relocation decision, written findings in one or more newspapers within the community from which the team seeks to relocate setting for the basis of its decision in light of the League's rules and procedures for evaluating franchise relocation; and

(3) Deliver copies of its written findings to the local governments of the community from which the sports team seeks to relocate and any sports authority, or similar entity with jurisdiction over the stadium or facility from which the professional sports team seeks to relocate.

The League shall give the most careful consideration to any proposal from the current home community that will preserve the existing relationship in an economically-realistic way.

A decision by the League authorizing a member club to relocate shall not affect the enforceability under state law of a stadium lease to which that member club is a party.

## III. Expansion

In the event the League decides to expand, it shall, consistent with sound business judgment, ensure that fair consideration is given to any applicant community, including a community that may have previously lost a profitable and well-supported franchise to relocation prior to the implementation of these procedures. The League shall make available to all interested communities the criteria it will use to evaluate applications for an expansion franchise, and such interested communities may use such criteria in formulating their applications.

## IV. Stadium Financing

State-of-the-art stadium facilities benefit communities as well as sports franchises. The USCM and the League understand that public-private partnerships have been used to pay for constructing or modernizing these facilities. The USCM and the League recognize the obligations associated with the use of public funds and the need for both community and the team to fulfill the requirements of their lease agreements. To reflect their commitment to public-private partnerships in stadium development, the USCM and the League will build upon existing financing mechanisms, as described in Addendum I, and will work together to seek financing avenues as feasible and appropriate, including through negotiated arrangements with the National Football League Players Association.

## V. Communications

The USCM and the League recognize that pursuit of their common interests and the identification and resolution of differences is substantially eased by regular and candid communications on such issues as the implementation of relocation procedures, stadium financing and ownership policy. Accordingly, both parties commit themselves to implementing a structure of communications that will facilitate and build upon the cooperation that underlies this Statement of Principles.